76282. GEARING v. COMPLETE WRECKER SERVICE, INC. et al.
(370 SE2d 9)

SOGNIER, Judge.

Lockheed Georgia Employees Federal Credit Union (Lockheed) instituted action against Complete Wrecker Service, Inc., to recover damages incurred when Complete Wrecker sold at auction a pickup truck registered to William Gearing, Jr., on which Lockheed had a first lien. Gearing was granted leave to intervene as a plaintiff, and to amend his complaint to add as defendants Complete Body Works, Inc., and Raymond Houston, the president, and Margie Houston, the sole shareholder, of both corporations. The recast complaint alleged that Complete Wrecker had towed, and Complete Body Works had made repairs on, Gearing's truck after it was involved in a wreck, and that all defendants had acted in concert to unlawfully deprive Gearing of possession of his truck. Complete Wrecker subsequently settled with Lockheed, and Lockheed is not involved in this appeal. The trial court ruled against Gearing and in favor of all defendants, and Gearing appeals.

The trial court found that appellant had granted Lockheed a purchase money security interest in his 1983 Chevrolet pickup, and that when the vehicle was damaged in a collision, it was towed by Complete Wrecker Service to Complete Body Works, located on the same premises, for repairs. The repair work and use of a rental vehicle during the repair period were authorized by the insurance carrier of the person at fault in the collision. When the repairs were completed, appellant was notified and, although dissatisfied with the repairs, he tendered in payment a check from the insurance carrier, which covered the cost of repairs completely, but covered only partially the cost of the rental vehicle, which had been charged to appellees' account by agreement. The tendered check was refused by appellees. Approximately three months later, when appellees had not been paid, they proceeded under OCGA § 40-11-1 et seq. to acquire and foreclose a lien on the truck as an abandoned vehicle.

1. Appellant contends the trial court erred by applying OCGA § 40-11-1 et seq. rather than OCGA § 40-3-54 in determining whether appellees complied with the proper procedure before selling the truck. We do not agree. Although appellees might have proceeded under

OCGA § 40-3-54, the mechanics' lien statute, we find no error in the trial court's conclusion that appellees were also authorized to employ the procedure set forth in OCGA § 40-11-1 et seq. OCGA § 40-11-1 (1) (A), as it read during the time of this transaction, (Ga. L. 1980, pp. 995, 996) defined an "abandoned motor vehicle" as one "[w]hich has been left by the owner . . . with an automobile dealer, repairman, or wrecker service for repair or for some other reason and has not been called for by such owner . . . within 60 days after the completion of necessary repairs." (We note that Ga. L. 1985 substituted 30 days for 60 days in this code section.) Appellant's truck was obviously such a vehicle as is contemplated by the statute. *Miller v. Self*, 137 Ga. App. 717 (224 SE2d 823) (1976), cited by appellant, is distinguishable from the case at bar in that the repairman in that case unilaterally and without explanation raised the agreed upon price for repairs and would not surrender the vehicle to its owner until the higher charges were paid. Such is not the case here, where it is uncontroverted appellant agreed to pay the rental vehicle fees, which were billed to appellees as a convenience to appellant. The record shows that appellant testified the reason he did not pick up the truck was because he did not have the money, and that he knew the vehicle was going to be sold if he did not pick it up. Under these circumstances, the trial court did not err by applying OCGA § 40-11-1 et seq.

2. Appellant next maintains the trial court erred by failing to find that appellees did not comply with the notice requirements of OCGA § 40-11-2, and that such failure rendered the subsequent foreclosure and sale invalid. However, the fact that appellees were not in strict compliance with the notice requirements of the statute does not mandate a conclusion that their actions amounted to a conversion, as appellant claims. Appellees knew who the owner was, and in fact made several attempts to notify him formally. In addition, they spoke with him several times over the telephone, and it is uncontroverted that appellant knew the vehicle would be sold if he did not claim it. In *Shaw v. Wheat Street Baptist Church*, 141 Ga. App. 883, 885 (234 SE2d 711) (1977), this court stated that "[a]lthough [appellees] did not advertise in the newspaper the description of the vehicle impounded, or notify the Department of Public Safety in compliance with [OCGA § 40-11-2], they proved that they made an effort to identify and find the true owner of the vehicle. . . ." In finding no conversion despite this lack of compliance with the notice provisions of the statute, the court noted that "[i]t is evident [appellant] knew who had removed his abandoned vehicle from their property where he had no right to leave it. He could have reclaimed it with payment of removal costs." Id. Consequently, since here, as in *Shaw*, supra, "a good faith effort has been made to find and notify the owner prior to removal of the abandoned property," id. at 885-886, the trial court did

not err by finding there was no conversion.

3. Appellant contends the rental charges did not form any part of the consideration for the repair agreement and therefore collection of these charges was not authorized under the abandoned vehicle statute. We find no merit in this contention. In its provisions for acquisition and foreclosure of a lien, the abandoned motor vehicle statute refers only to the debt for "the reasonable fees connected with . . . removal or storage [of the vehicle] plus the cost of any advertisement." OCGA §§ 40-11-4; 40-11-5 (2). Thus only those charges are "authorized" under the statute, rendering the repair charges as well as the rental charges "unauthorized" in this sense. Appellees were not in violation of any statute or agreement, however, in refusing to release the vehicle until the rental charges, as well as the repair charges, were paid. It is uncontroverted that appellant agreed to pay the rental charges, distinguishing this situation from the one presented in *Miller v. Self*, supra. Nor do we agree with appellant that the fact that the rental charges were agreed to and began accruing before the specific repairs were authorized is significant. Although the agreement to pay for the rental charges and the agreement to pay for the repairs may indeed have been "separate" in this sense, appellant agreed to pay appellees for both, and there is consequently no question that appellees were authorized to demand payment of the sums they properly charged appellant.

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED MAY 25, 1988.

*Dorothy W. Coprich*, for appellant.
*Richard F. Otonicar, Russell S. Thomas*, for appellees.