## A05A1417. PURSER TRUCK SALES, INC. v. HORTON.
### (622 SE2d 405)

PHIPPS, Judge.

Purser Truck Sales, Inc., as holder of a lien on a vehicle, filed the instant action seeking a writ of possession for the vehicle held by Rayford Horton, operator of Horton's Wrecker Service. Horton denied wrongfully holding the vehicle, claiming that he had a lien on it for towing and storing it. The trial court ruled in favor of Horton. Purser appeals. We conclude that no lien existed in favor of Horton and therefore reverse the trial court's ruling.

At a hearing, Horton testified that the Georgia Bureau of Investigation (GBI) had asked him to pick up the vehicle and store it under a "hold" status until contacted again by the GBI. Thereafter, at about 2:00 one morning in mid-July 2004, Horton went to the residence of the owner of the vehicle and towed it to a location where he stored it.

Purser was listed as a lienholder on the title for the vehicle. Thus, near the end of July, the GBI contacted one of Purser's employees to determine whether a substantial amount was owed on the vehicle. In turn, that employee called Horton about releasing the vehicle to Purser. Horton responded that he would not release the vehicle until the GBI released the "hold" status and he received payment for towing and storing the vehicle. The GBI informed Horton about 20 to 30 days after he picked up the vehicle that the "hold" status was lifted. Purser demanded the vehicle, but refused to pay Horton the amount that he claimed was due. As of the hearing date in January 2005, Horton still had the vehicle.

Purser's attorney asserted at the hearing that Horton could claim a lien on the vehicle only in accordance with Georgia's Abandoned Motor Vehicles Chapter.[1] The attorney argued that Horton had failed to comply with certain of the Chapter's notice provisions and consequently was not entitled to fees for towing and storing the vehicle. Horton's attorney countered that the Abandoned Motor Vehicles Chapter was inapplicable where, as here, the parties were in agreement that the vehicle was taken as part of a drug case. Horton's attorney argued that Georgia's Controlled Substances Act[2] controlled any notice requirements and, further, that Horton had a mechanics' lien.

The trial court ruled that, because the vehicle was seized from the owner's residence at the GBI's request as part of a drug case under the Controlled Substances Act, that Act controlled this case and the Abandoned Motor Vehicles Chapter was inapplicable. The court

[1] OCGA § 40-11-1 et seq.
[2] OCGA § 16-13-20 et seq.

found that Horton had provided a benefit to Purser and that Purser had had actual knowledge of the whereabouts and circumstances of the vehicle since at least the beginning of August 2004. The trial court ordered Horton to release the vehicle to Purser upon Purser paying Horton's charges. Finally, the trial court remarked that nothing in its order "shall be construed to effect any claim . . . against the State of Georgia for reimbursement of payment ordered herein."

The trial court's ruling was based upon its application of law to essentially undisputed facts. Thus, we apply a de novo standard of review.[3] "Unless [he or she] has a lien on the vehicle, a [person who] has towed and held a [vehicle] at police request must release the [vehicle] to its owner upon demand once police have released the [vehicle] from its 'hold' status."[4] Furthermore, the Supreme Court of Georgia has instructed that "lien statutes, being in derogation of the common law, are to be strictly construed against the lien claimant, and that strict compliance is required in order to enforce them."[5] As shown below, Horton failed to demonstrate any type of lien on the vehicle in his favor. Therefore, the trial court erred in ruling that Horton could nevertheless withhold it from Purser's demand.

1. Purser correctly contends that Horton holds no mechanics' lien.

OCGA § 40-3-54, governing mechanics' liens, provides that "[a]ll mechanics of every sort shall have a special lien on any vehicle . . . for work done, or for work done and materials furnished, or for materials furnished in repairing or servicing such vehicle."[6] In *Southern Gen. Ins. Co. v. Auto Transformation*,[7] we considered whether towing a vehicle and preparing an estimate of repair costs may be considered work done or materials furnished in repairing or servicing a vehicle. We determined that they may not, recognizing that the common law lien for repairs was based on repairs that enhanced the value of the vehicle. Storing a vehicle does not enhance its value. Strictly construing OCGA § 40-3-54 as we are required to do, we conclude that because the charges at issue here do not fall within that Code section, there is no mechanics' lien in favor of Horton.[8]

---

[3] See *Dept. of Human Resources v. Woodruff*, 234 Ga. App. 513 (507 SE2d 249) (1998) (rulings based on application of law to undisputed facts are subject to the de novo standard of review).

[4] *A Tow, Inc. v. Williams*, 245 Ga. App. 661, 662 (538 SE2d 542) (2000).

[5] *Benning Constr. Co. v. Dykes Paving & Constr. Co.*, 263 Ga. 16, 18 (426 SE2d 564) (1993) (citations omitted).

[6] OCGA § 40-3-54 (a).

[7] 206 Ga. App. 243, 244 (1) (424 SE2d 883) (1992).

[8] Furthermore, OCGA § 40-3-54 requires a valid debt to exist to sustain a mechanics' lien on a vehicle. *P & B Corp. of America v. One 1983 BMW*, 175 Ga. App. 462 (1) (333 SE2d 633) (1985). For a valid debt to exist on a vehicle, work must have been done or supplies furnished

2. Purser also correctly contends that Horton holds no lien pursuant to the Abandoned Motor Vehicles Chapter.

"Abandoned motor vehicle" includes a motor vehicle that "has been lawfully towed onto the property of another at the request of a law enforcement officer and left there for a period of not less than 30 days without anyone having paid all reasonable current charges for such towing and storage."[9] OCGA § 40-11-4 (a), which is part of that Chapter, provides, "Any person who removes or stores any motor vehicle which is or becomes an abandoned motor vehicle shall have a lien on such vehicle for the reasonable fees connected with such removal or storage. . . . Such lien shall exist if the person moving or storing such vehicle is in compliance with Code Section 40-11-2." One of the duties that OCGA § 40-11-2 imposes upon one who removes or stores a motor vehicle is to provide written notification of specified information to the vehicle's owners.[10] Subsection (k) of OCGA § 40-11-2 states, "Any person who does not provide the notice and information required by this Code section . . . shall not be entitled to any storage fees."

Assuming without deciding that the Abandoned Motor Vehicles Chapter applies in cases, where, as here, the vehicle at issue was towed and stored under the Controlled Substances Act, that Chapter does not help Horton. "[O]ne who claims a lien must bring himself clearly within the law."[11] Horton admittedly provided no written notification whatsoever to Purser. Strictly construing the lien law as we must, such failure forfeited the fees that the Abandoned Motor Vehicles Chapter might have provided.[12]

This outcome withstands *Gearing v. Complete Wrecker Service*,[13] where the owner of a vehicle sued a towing company and a repair shop for conversion because the defendants had auctioned his vehicle under the Abandoned Motor Vehicles Chapter. We found that the defendants' failure to strictly comply with the notice requirements of OCGA § 40-11-2 did not mandate a conclusion that their actions amounted to a conversion because they had made a good faith effort to find and notify the owner prior to the sale and the owner in fact had

---

by a contract with the owner or by the authority of the owner. Id. In light of our decision in this division, we need not reach the issue of whether Horton held a valid debt against Purser.

[9] OCGA § 40-11-1 (1) (C). See generally *Atlantic Steel Credit Union v. Shephard*, 204 Ga. App. 297, 298 (1) (419 SE2d 132) (1992); but see *Mays v. Lampkin*, 207 Ga. App. 739, 740 (1) (429 SE2d 113) (1993).

[10] See OCGA § 40-11-2 (d), (f). "Owners" means "the registered owner, the owner as recorded on the title, lessor, lessee, security interest holders, and all lienholders as shown on the records of the Department of Motor Vehicle Safety." OCGA § 40-11-1 (3).

[11] *Southern Gen. Ins. Co.*, supra (citation and punctuation omitted).

[12] See generally *A Tow*, supra; compare *Atlantic Steel Credit Union*, supra.

[13] 187 Ga. App. 242 (370 SE2d 9) (1988).

actual notice that the vehicle would be sold if he did not claim it. But at the time of the incidents underlying *Gearing*, subsection (k) of OCGA § 40-11-2 had not been enacted. The General Assembly enacted that subsection after *Gearing* as part of its goal "to provide for certain civil . . . penalties when certain information and notices are not given."[14] As subsection (k) plainly and unambiguously provides that where the notice requirements are not met, fees are forfeited, *Gearing* can afford Horton no escape from the consequences of having failed to strictly comply with the notice requirements of the Abandoned Motor Vehicles Chapter.

3. Finally, Purser correctly contends that the Controlled Substances Act did not provide a lien in favor of Horton.

At the hearing, Horton's attorney argued that, because the vehicle was towed and stored as a seized vehicle under the Controlled Substances Act, Horton had no duty to notify anyone. OCGA § 16-13-49 (i) (2) pertinently provides,

> When property is seized pursuant to [the Controlled Substances Act], the district attorney or the sheriff, drug agent, or law enforcement officer seizing the same shall give notice of the seizure to any owner or interest holder who is not present at the time of seizure by personal service, publication, or the mailing of written notice.

But regardless of whether that Act imposed notification duties upon Horton, the particular section of that Act relied upon by him, OCGA § 16-13-49, is silent on whether a person providing towing and storing services has a lien for such services. "[T]he law must by clear and explicit terms create the lien as it cannot exist by implication."[15] Because OCGA § 16-13-49 contains no clear and explicit terms providing a lien for towing and storing a vehicle at the request of a law enforcement agency, it provided Horton no lien for his services in connection with the vehicle.

We note that OCGA § 16-13-49 directs that where property is forfeited and sold under the Controlled Substances Act, monies therefrom shall be used to pay "costs," which includes towing and storage expenses.[16] But here, after ascertaining the amount of the loan underlying Purser's lien, the GBI apparently determined that retention and forfeiture of the vehicle was unnecessary. Therefore, there was no sale, no proceeds, and no costs paid therefrom. These circumstances led to Horton's attorney arguing at the hearing, "It's

---

[14] Ga. L. 1988, pp. 1750, 1754.

[15] *Southern Gen. Ins. Co.*, supra (citation and punctuation omitted).

[16] OCGA § 16-13-49 (a) (2) (A).

not fair or proper that the State can seize things in the middle of the night and have a private party do all the work of picking [vehicles] up and then leave them with an empty bag." Further, he asserted that "usually with most things — the party that requests that another party perform a service, in the first instance, [*that party*] should be responsible for it. The GBI requested it."[17] But in this case, the GBI was not joined as a party. Thus, as the trial court's remarks intimated, those claims are for another day.

*Judgment reversed. Andrews, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 19, 2005.

*Molly L. McCollum*, for appellant.
*Straughan & Straughan, Mark W. Straughan*, for appellee.